```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
STEPHANIE TULLO,                         :
                                         :
              Plaintiff,                 :    06 Civ. 5251 (JSR)
                                         :
         -v-                             :    MEMORANDUM ORDER
                                         :
McCALL PATTERN, CO.,                     :
                                         :
              Defendant.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

    Secure in their tenured professorships, economists extol the overall benefits of a market economy, while too often ignoring its more immediate human costs. In this sad case, Stephanie Tullo, a dedicated worker who spent her adult life in the employ of defendant McCall Pattern ("McCall"), a manufacturer of home sewing patterns, alleges that her termination at the age of 60 was the result of unlawful age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").[1] The record on summary judgment, however, establishes beyond any genuine dispute that she was terminated, not because of her age, but because of McCall's declining fortunes. Accordingly, McCall's summary judgment motion must be granted in full and Tullo's case dismissed.

    The facts of record, undisputed or, where disputed, taken in the light most favorable to Tullo, establish the following:

---

[1] Tullo's complaint also alleged federal, state and city claims of gender discrimination, but she withdrew those claims after summary judgment motion practice began. They are hereby dismissed with prejudice.

McCall, founded in 1870, makes patterns for the home-sewing industry.  See Defendant's Local Rule 56.1 Statement of Undisputed Material Facts ("Def. 56.1") ¶ 1.[2]  McCall's President, Robin Davies, is a 54-year-old male, who acceded to the position when his predecessor, Robert Hermann, died in 2004.  Def. 56.1 ¶ 2.

Stephanie Tullo began her employment at McCall in October of 1963, when she was 18 years old, and remained with the company for over forty years before being terminated in December, 2005.  Def. 56.1 ¶ 8.  Beginning as a secretary, Tullo held a variety of positions, ultimately becoming Director of Administrative Services, a position she held from 1985 until her termination.  Def. 56.1 ¶ 9.  In that capacity, Tullo, who worked at McCall's New York office, was responsible for McCall's budgeting, purchasing, and various administrative functions.  Def. 56.1 ¶ 10.  She reported to Henry Miller, the Vice President of Product Preparation, age 57, who was in charge of various departments including Administrative Services.  Def. 56.1 ¶¶ 4,17.  Miller, in turn, reported directly to Davies, the President.  Id.  As of the time Tullo was terminated, her annual salary was $90,899, by far the highest salary of any employee in the Administrative Services Department.  Def. 56.1 ¶ 11.

---

[2] All references herein to defendant's 56.1 statement refer to statement that were not materially disputed in plaintiff's responsive 56.1 statement and that were supported by admissible evidence cited in the relevant paragraphs of defendant's 56.1 statement.

2

By all accounts, Tullo was a diligent employee who received "outstanding" performance reviews while maintaining "great" relationships with her superiors. See Plaintiff's Counter Statement Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 13; Def. 56.1 ¶¶ 13-14. From the mid-1970s onward, however, McCall's financial condition steadily declined. Def. 56.1 ¶ 20. In 1985, McCall filed for Chapter 11 bankruptcy. See Def. 56.1 ¶ 21. Although it eventually emerged from bankruptcy, McCall remained in economic difficulties, leading it to repeatedly cut costs and reduce its workforce. In 2002, all employees at McCall were notified that the company was once again experiencing financial problems and that salaries would be cut by six to eighteen percent; Tullo's salary was cut by ten percent. Def. 56.1 ¶ 23. In May, 2004, a decision was made to initiate two rounds of layoffs as part of what was dubbed a "profit improvement plan" ("PIP"), which also called for McCall to make use of cheaper materials and reduce the number of new designs. See Def. 56.1 ¶¶ 24-27.

As a result of these two rounds of layoffs, over ten percent of the company's 382 employees were terminated: 15 in New York and 26 in the Kansas office. Def. 56.1 ¶¶ 28, 88. Tullo, who participated in the discussions of whom to layoff, was not considered as a candidate for such layoffs. Def. 56.1 ¶¶ 27-29. In 2005, however, after short-lived indications that McCall had turned a corner, the company learned that its sales for Halloween, the biggest season for McCall, were down approximately thirty-six percent from the previous

3

year, and that two of McCall's biggest customers were themselves experiencing financial difficulties. Def. 56.1 ¶ 30.  Although the company earned a net profit, its sales were down almost $2 million from the year before and gross revenue fell well short of that envisioned by the 2004 PIP.  Def. 56.1 ¶¶ 30-32; Pl. 56.1 ¶¶ 30-32. In response, McCall's management held a series of meetings exploring various ways to further reduce costs.  Def. 56.1 ¶ 37.  Ultimately, at a meeting on October 26, 2005 attended by Davies and various Vice Presidents, it was decided that McCall would eliminate "11 positions in New York . . . including Tullo's, [as well as] 25 [positions] in Kansas."  Def. 56.1 ¶ 38.

On November 3, 2005, Davies told Tullo that she was being laid off.  Def. 56.1 ¶ 56; Pl. 56.1 ¶ 56.  Prior to the conversation with Tullo, Davies told McCall's Human Resources Manager, Nancy Jo Ellis, that he knew Tullo would be extremely upset at being terminated and sought advice about how best to give the news to her. Def. 56.1 ¶ 58.  Davies had a roughly similar conversation with Ramon Roncal, another employee in Tullo's department.  Def. ¶¶ 56.1  59-60; Pl. 56.1 ¶ 59.

According to Tullo's affidavit (which is consistent with her deposition testimony), the termination occurred as follows:

> On the afternoon of November 3, 2005, I was in my office working when [Davies] appeared at my door and asked me to accompany him to his office. When I got [there], Davies told me that the Company's sales numbers were not good.  Then he said: "You know, Stephanie, you are 60 years old and you're with the company 42 years, you should retire."  I told Mr. Davies that I can't retire.  He repeated the statement. "You're 60 years old and you're here 42 years and you should

4

>           retire." I said, "Robin, please don't say that. I'm not
>           retiring. I have no intention of retiring." Mr. Davies told
>           me that Ms. Ellis, McCall's Human Resources Manager, would
>           provide me with my termination papers . . . .

Tullo Aff. ¶ 10.

After her termination, Tullo's position was not filled. Def. 56.1 ¶ 70. The bulk of her duties were absorbed by Miller, her superior, although employees in Kansas also assumed some of her lesser responsibilities. Def. 56.1 ¶ 60. Tullo believes that Roncal, a younger man who worked for Tullo, also took on some of her duties but admits that she has no personal knowledge nor other admissible evidence that this is so. Def. 56.1 ¶ 75.

The various rounds of layoffs did not alter the age of the workforce at McCall, which continues to employ older workers in large numbers: 84% of employees in McCall's New York office are over age 40, 65% are over 50. After the 2005 layoffs, the percentage of employees over 60 went from 19% to 18%, a very modest reduction attributable to Tullo's own departure. Def. 56.1 ¶ 86; Pl. 56.1 ¶ 86. The broader statistics for the company tell a similar story. Def. 56.1 ¶ 85; Pl. 56.1 ¶ 85.

Against this background, Tullo no longer contends, if she ever did, that McCall did not have a bona fide business reason for terminating her, <u>viz</u>., as part of a general reduction in McCall's work force, in which she was included because of her salary, which far exceeded that of anyone else in her department.[3] Tullo argues,

---

[3] Arguing only under a mixed-motive standard in her papers, Tullo nonetheless claims that she "reserves the right" to argue

however, that this is a "mixed motive" case, in which another motive, age discrimination, also played a material role in the decision to terminate her, as shown, she alleges, by Davies' remarks quoted above. But there are several fatal flaws in this argument:

To begin with, it is beyond any genuine factual dispute that the actual decision to fire Tullo was made not by Davies, who broke the news to her, but rather by Miller, the Vice President to whom she reported. In his deposition, Miller testified that roughly half the layoffs in New York needed to come from his departments, since they employed approximately half of McCall's New York employees, and that it was his responsibility to make the selection. See Miller Dep. 38:22-39:4; Ellis Aff. ¶ 10. Miller explained that he had selected Tullo as among those to terminate because he "looked at . . . positions where we could still produce our product and get the work done" and "came to the conclusion that Stephanie's position could be . . . eliminated if we reorganized the way the work was done and where the work was done and who did the work. And I took Stephanie's position because it was worth her salary, which was substantial." See Miller Dep. 37:8-37:17. As noted, Tullo earned $90,899, almost twice that of the next highest-paid person in the department, Roncal, who earned $54,000. Def. 56.1 ¶ 48.

Nancy Jo Ellis corroborates Miller's account that in October, 2005, Miller selected Tullo for termination because of her salary and

---

pretext. See Plaintiff's Memorandum of Law in Opposition to Summary Judgment ("Pl. Mem.") at 8 n.3. No such reservation is permissible and the argument has been waived.

6

because Roncal, who also worked in Tullo's department, had the technical skill to repair and maintain computers.  Although Miller's proposal to fire Tullo for these reasons was subject to review, it was reviewed, not just by Davies, but also by John Kobiskie, McCall's Chief Financial Officer, and the decision to terminate Tullo was unanimous.  Def. 56.1 ¶ 52.

Although Tullo attempts to dispute McCall's assertion that Miller, not Davies, was the operative decision-maker, she admitted in her deposition that she does not know who made the decision to terminate her, or what criteria were used.  See Tullo Dep. 117:11-119:7.  In this case, her unsupported, non-evidentiary belief that Davies played a material role is belied by the depositions, affidavits and documentary evidence in this case, which support McCall's claim that, throughout this third round of layoffs, the operative determination of whom to lay off was made by the Vice Presidents of the respective departments: in Tullo's case, by Miller.

Furthermore, the mere fact of Davies' suggestion that Tullo retire, rather than face termination, does not, under these circumstances, create a reasonable inference of discrimination. because undisputed evidence demonstrates that McCall "decided to fire [Tullo] before offering [her] the alternative choice of retirement." Young v. General Foods Corp., 840 F.2d 825, 831 (11th Cir. 1988) (citation omitted); see also Lorans v. Crew, 2000 U.S. Dist. LEXIS 12117, at *11 (S.D.N.Y. Aug. 23, 2000)(concluding it was "perfectly legal to discuss retirement with plaintiff, and such discussion, given the evidence as a whole, does not furnish any proof of age

discrimination . . . ."). The ADEA "does not make all discussion of age taboo." Raskin v. Wyatt Co., 125 F.3d 55, 63 (2d Cir. 1997). Here, on any reasonable interpretation, Davies' remark "tends to show [only] a desire to provide [Tullo] with an opportunity to avoid the stigma associated with having been fired." Young, 840 F.2d at 831.

Accordingly, McCall's motion for summary judgment is hereby granted in all respects. The Clerk of the Court is directed to enter final judgment, dismissing the complaint with prejudice.

SO ORDERED.

                                                                       JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       June 21, 2007